Sarah Dennis, Petitioner for Alexander Lopez-Valencia v. Attorney General of the United States This case is back before this Court due to the Board of Immigration Appeals and the Immigration When this case was first before this Court, the government voluntarily moved to remand the case because the Board did not have the benefit of the full record as required, and that remand would give the Board the opportunity to review the entire record in adjudicating Mr. Lopez-Valencia's appeal. What were the procedural errors that you allege here of the IJ? The IJ failed to consider Mr. Lopez-Valencia's claims of protected grounds. In doing so, it did not consider Exhibit 9 to the record, which was his pre-hearing memorandum, which detailed two bases, two protected grounds. The first being membership in particular social groups, and the second being based on an imputed political opinion. The immigration judge did not consider either of his claims of protected grounds. And who prepared that pre-hearing memorandum? That was his counsel at the time. At the time. Now, if the agency... Go ahead. You finish your answer. I'm sorry. I'm sorry, Judge. I was just clarifying that his counsel at the time is co-counsel currently still. If the agency, if the IJ had specifically analyzed Mr. Lopez-Valencia's specific proposed social groups, wouldn't it have found that those groups weren't cognizable because they failed the... You know, there's three things you have to supply, two of which are particularity and social distinction requirements. And I don't see how they meet those requirements in any event. They're very broad, and a lot of courts would consider them amorphous. So how do they meet, you know, he says, individuals who acted in opposition to FARC, and two, the refusal to comply with FARC extortion demands. How do they show particularity? Start with that. Yes, Your Honor. Well, first, the government has not contested the validity of these PSGs on this appeal. But moreover, the board has previously found that past experience can be a unique characteristic upon which a PSG can be based. And these... Wasn't this just an economic dispute? Wasn't this just a dispute over money owed? Not with a political group. Your Honor, it was more than an economic dispute. They continued to persecute Mr. Lopez Valencia because he challenged their authority. For example, after he had refused to pay their extortion demands and essentially challenged their authority over him and others in the area, they continued to pursue... They threw a spade at him, putting him in the hospital and nearly killing him. After that point, Mr. Lopez Valencia fled to another city several hours away. You know, William Goying doesn't answer the question because he did pay the first four times they came with this protection scheme they had. He paid the problem. The fifth time, he decided he's not going to pay. And they fur-bombed him. Now, to me, that's exactly what is being suggested by the question. He was involved and he was being shaken down. It was a financial... It was extortion. He decided he's not going along with extortion. And he's punished for that, number one. And then if you could also, I want to hear the answer, but for the life of me, I don't understand how you get two social groups out of the groups. I don't understand why that isn't the same group. The first one you're alleging is individuals who acted in opposition to FARC criminal activity. The second one, individuals who refused to comply with the FARC's extortion demands. In other words, individuals who refused to comply with FARC's criminal activity. I don't know how you get two groups out of that. Not really that it matters in terms of the argument because you still have an issue over there. Neither group was looked at by the IJ. Well, Your Honor, to address your first question, the persecution went beyond the grenade attack on him after he failed to pay. After he left behind the business that they sought to extort, he moved to another city. He left behind his home and he left behind that business. But FARC continued to pursue him. Wait a minute, he lived somewhere else for two and a half years, did he not? He did, Your Honor. And he came back, but it doesn't, there's nothing that I can see, and maybe I'm wrong, in the record that says during that two and a half years, he was in any way harmed or threatened. Nor was his family. Nor was his family that stayed behind. Or was left behind. Or was left behind, Your Honor. He moved away twice. The first time he moved to Cali for two and a half years and returned to his hometown. He relocated. He relocated. That is probably the biggest problem I have in this case. But why can't he just relocate now somewhere within Columbia? He's done it before. And he had no difficulty apparently in allowing his family to remain in a relocated place, although I think they've returned to the town where he contends his troubles began. Your Honor, why can't he relocate? Why can't he relocate? Your Honor, he did try relocating, but he was no longer safe. What's the record show was the threat to him such that he was no longer safe? Your Honor, first, after he had moved to the other city, FARC continued to pursue him. They began questioning his cousin about his whereabouts. And FARC kidnapped his cousin. He was disappeared and has not been since. Does the record show he was kidnapped or does the record show his cousin has disappeared somehow? The record shows that he was kidnapped. And Mr. Lopez-Gonzalez testified that he was kidnapped because FARC had wanted to get more information about him, about his whereabouts. And ultimately, FARC did find him in Cali. Mr. Lopez-Gonzalez only left after he had been spotted by a FARC member and then chased through the streets of this other city. All right. Now, stop there. Does the record show he was chased or does the record show he was followed? Is there any evidence that he was menaced in any way by this person he recognized? Your Honor, he fled away from this person. He feared what this person might do. And this person, this FARC member, was clearly in pursuit of him. He was following him. Mr. Lopez-Gonzalez fortunately was able to evade and not have to be confronted. But the record shows that he was clearly afraid of this FARC member who had found him in another city after he thought he would be safe. And it was only at that point. The trouble I have with the argument is that there's nothing, given the record we have, I would assume that had he continued to pay FARC, I'm not suggesting he should have continued to give in to the extortion or the shakedown, but had he continued to do that, we wouldn't be here. Maybe he wouldn't be here either. But we wouldn't be here. There's nothing to suggest that FARC would have perpetrated any violence upon him or his family had he continued to pay them off. Judge McKee, his refusal to pay them is more than just the monetary refusal to give them money. It stood for challenging their authority. And Mr. Lopez-Gonzalez put forward in that pre-hearing memorandum that FARC imputed an anti-FARC political opinion on individuals. Well, why is that a political opinion? If I don't want to get shaken down by the local mobster, why does that impute on top of that a political opinion? It wasn't that he was refusing to pay because he didn't like FARC's left-wing leanings. He was refusing to pay because he didn't think they should be sticking their hands in his pocket. Why is that a political opinion? Well, Your Honor, it's the difference between the fact that he did not actually have a political opinion and what FARC imputed onto him. What matters here is what FARC believed his opinion to be. And there are other reports on the record that FARC imputed an anti-FARC political opinion on individuals who disagreed with their tactics and refused to comply with their demands. You didn't say politics. You said refused – disagreed with their tactics. You didn't say disagreed with their policies or program if they have a program. And that's exactly my point, that he disagreed with their tactics, i.e., their extortionate tactics, their extortion shaking him down, not the fact that they were left-wing guerrillas. I don't think he – I think the record suggests he didn't care whether they were left-wing, white-wing. That wasn't his concern. Yes, Judge McKee, but there was evidence on the record, an INS report, that indicated that FARC had perceived – had gone after and perceived an anti-FARC political opinion on individuals who challenged their tactics. So the tactics are – You're combining politics and tactics. And I don't blame you for trying to do that. And it's a very skillful argument you're making. But I'm not sure how convincing it is because, again, you're saying that FARC attributed a political opinion to anyone who challenged their tactics. And that's maybe a bridge too far for you because it's – their concern with him is that he did not like their tactics, as you've said. Not that he didn't like their politics. I'm not even sure that he knew on the record what their politics were. Judge McKee makes a good point. In fact, the limitations of language and our abilities to use it certainly permit a massaging of the word politics and political into just about anything we want. But if I may, I'd like to ask that in addition to, or perhaps as part of the relocation question I asked, isn't the situation ameliorated for Mr. López Valencia? By virtue of the fact, the well-recognized fact, that the government of Colombia and FARC came to an agreement years back that FARC would stand down. And hasn't that been the case? What is the threat to Mr. López Valencia going forward? Your Honor, the threat to Mr. López Valencia continues to be FARC. And he presented evidence in the immigration judge's proceedings in indicating that – and with other – not just his testimony, but with other documentary support – that FARC in many zones continue to be armed and continue to be a threat. Even after the peace accord was reached with the government. So that threat is still real. And there is evidence on the record indicating that. Are there any additional questions of Ms. Dennis before we have her back on rebuttal? I have none. I have none. All right. Mr. Stalzer? Good morning, Your Honors. Counsel, may it please the Court. My name is Rob Stalzer. I'm here on behalf of the AG. Your Honors, there are two main issues here to address. The first is with respect to the motive of the FARC criminals. And the second is with respect to relocation. But on the first question, I want to direct the Court's attention – Can I ask you a preliminary question? Of course, Your Honor. This matter was set back before to consider additional information. And it looks like what the BIA did was reissue its prior opinion with a footnote from the prior opinion, footnote three, that obviously should not have been in the second opinion at all. What are we to make of it? It looks like almost as if they're saying, you know what, to heck with you guys. We have a decision. We're going to reissue it. And by mistake, somebody left in a footnote from the prior decision that was sent back to them. That doesn't look good from a process perspective. Your Honor, I think we should take that footnote in the reissue decision and read it in conjunction with the reissue notice that the Board gave, saying simply that we looked at it, we did have the record, and we did have it before us in our prior decision, so we're going to reissue it. No, it says, although the immigration judge's decision reflects a memorandum of law was filed and marked as Exhibit 9, we're unable to locate it. I mean, okay, if they couldn't locate it, what were they supposed to do then? Or we continue to be unable to locate it, or we've gotten additional information as to what is purportedly said? Nothing. Right. Like I said, I think it just has to be read in conjunction with the text of the reissue decision. That's at the record site, page two, where they say the documents identified as missing were located in the record before the Board and were previously considered by the Board. I do see that still in there in that footnote. But I think if we read that in conjunction with the reissue notice, it removes any ambiguity about whether or not the Board was aware of that. But we don't know why the BIA didn't have access. There's no explanation of why. I'm lost. I agree there's no explanation in there of why. The Board is simply saying they had access. They were wrong before, but now they're saying, look, we have that memorandum. It's in the record, and we considered it, and therefore we reissued our decision. Now you're saying they did have the memorandum. They didn't have the memorandum. They're unable to locate it. First they said they didn't, but later they said they did. And I think we should take their later pronouncement as the more complete and correct statement. And if that's the case, then why does footnote three remain in the opinion? I don't know, Your Honor. Just because they were reissuing it. They didn't delete it. All right. It's not a way to run a railroad. Yes, Your Honor. I want to direct the court's attention to Elias Zacharias, because this goes to some of the questions that you were raising, Judge McKee, about motive and about whether or not the tactics of FARC could be some form of political imputed motive. And in that case, it was about guerrilla recruitment. And the Supreme Court said, no, no, no. Yes, the guerrillas were trying to recruit Elias Zacharias. And yes, the guerrillas are political. But that doesn't mean that they're recruiting him because of their politics. They were recruiting him because they wanted workers. And the same is true here. Petitioner wasn't being extorted because he resisted FARC. Everyone was being extorted. That's what he testified to, that all of the businesses in the neighborhood were being extorted. There was no indication that all those businesses were being extorted because they had some other opposition to FARC or relation to FARC or anything other than a pecuniary motive. And that was the same thing when he was asked, Point Bank, why did Pecora, why did this guy throw the grenade at you? And he said, it's because I stopped paying the extortion. That's not a political motive. It's not an imputed political motive. And it doesn't form the basis of any potential particular social group. And for that reason, there was no nexus to a protected ground, which means petitioner couldn't qualify for asylum or for withholding. And the immigration judge made all of these findings. I understand there was the difficulty because he didn't have Memorandum 9, this missing memorandum, which described the two particular social groups. But we can get over that because we know the motive. The immigration judge was very focused and said, look, we know what petitioner testified to. He was specifically asked what they were after. And in both circumstances, what were the FARC members who came to your business after? And the answer was they wanted the money. And the same thing, why did Pecora throw the explosive at you? He said, it's because I stopped paying. That is substantial evidence in support of the immigration judge's finding that the FARC members were not motivated on account of a protected ground. Now, turning to relocation, relocation was an important factual finding of the immigration judge. And the board in its decision relied on that finding to note that petitioner, you were able to travel to Cali for more than six years, a two and a half year stint. And then later, after the second run in with the FARC terrorists. And that was substantial evidence that he could relocate and therefore didn't qualify for asylum worth holding. That relocation finding is supported by substantial evidence. And petitioner, in their opening brief, waived contesting that finding. It is a dispositive finding of the board. And so even if there was some problem with the nexus finding, that finding alone, that relocation finding would be sufficient to reject this petition for review. Your honors, I don't want to belabor the point. I think we can rest on our brief unless you have other questions for me. Judge McKee, Judge Ambrose. Thank you for your time. Thank you very much, Mr. Stolzer. And Ms. Dennis, we'll have you back on rebuttal. Thank you, Your Honor. To start with the point that was just discussed, the relocate, the aspect of relocation, the finding of relocation. It's important to note that the immigration judge considered the ability of relocation as one of several factors in considering a convention against torture claim, which was not appealed to the board and is not under review currently. That finding was a completely separate context. Here on remand, with proper consideration of Mr. Lopez Valencia's protected grounds and a showing of past persecution and therefore presumed well-founded fear of future persecution, the burden would then be on the government to prove the relocation by preponderance of the evidence. And that's a different burden and a different context in which the immigration judge made that finding initially. So petitioners don't weigh that argument because it is not an issue in this appeal for the two claims that remain on this appeal, which are the asylum and removal claims. Next, addressing the government's other point about motive. As we touched on a little bit this morning, the persecution was not based on the fact that he was being extorted. It was that he was resisting their authority by refusing to comply with their demands, which I think is an important distinction. He then fled after an abandoned business that they sought to extort as the financial vehicle, and they still continue to pursue him and try to find out where he was and try to chase him down after he had moved to a city several hours away. And third, just one other point with the government regarding the reissued opinion. It's not true that the statement with the reissued opinion can just supersede because the contemporaneous statement in the opinion was that they were unable to find it. And so if the board was unable to find that memorandum, that Exhibit 9, they could not consider it. What the board said later in the notice was that they have since found it and so they must have considered it previously. Not that they had found it and then first considered it and that it did not change their analysis. They found it and assumed that they must have considered it, but that is contrary to the footnote, which was written at the time that they actually considered the case. So, Your Honors, the evidence that the board did not consider this document, perhaps just by honest mistake. They thought they might have because they later found it a year later after however many cases later, but it's clear from the actual record that they did not. And, Your Honors, ultimately, it's clear from the record that the immigration judge and the board did not consider Mr. Lopez-Alonso's claim of protected grounds. And in light of the immigration judge's findings that he was a credible witness and that the attacks on him over a period of seven years amounted to persecution, including a grenade attack, shots fired at him, the murder of his father and the disappearance of his cousin, forcing him to leave his home and his business, and ultimately chasing him down the streets of another city, are all factors that drive towards the fact that the immigration judge and the board should consider his protected grounds and his claims in full on remand. Thank you. Thank you, Your Honor. Thank you, Ms. Dennis. Thank you, Mr. Stalzer. We appreciate your arguments. We will take the matter under advisement. Can I just ask a question, Chief? Sure. Ms. Dennis, did you take this case pro bono, your firm? I did, Your Honor. All right. I'll turn it over to the Chief then. We express our appreciation for your advocacy. Thank you.